[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of James and Veronica B. to their daughter Kimberly, now 3 1/2 years of age. The case originated with the Department of Children and Families (hereafter, "DCF") obtaining an order of temporary custody on April 8, 1998. On October 15, 1998, the child, having been adjudicated neglected on June 18, 1998, was committed to the Commissioner of DCF for a period of one year. Extensions of commitment were granted on October 4, 1999 and September 12, 2000. On October 4, 1999 and September 12, 2000, the court found it not appropriate to continue to make reasonable efforts to reunify Kimberly with her mother or her father. On December 28, 2000, DCF filed the petition for termination of parental rights.
The court finds that the father was served with the petition for termination on January 5, 2001, and that the mother was noticed of the pendency of the petition by publication in the Bristol Press and the Hartford Courant on January 16, 2001. On January 22, 2001, the father and mother were defaulted for failure to appear. An attorney was appointed CT Page 6935 for the mother for the purpose of conducting a diligent search to locate her. The attorney was successful in locating the mother, in explaining the nature of the proceedings against her, in obtaining a current mailing address and phone number for the mother and in informing the mother of the hearing scheduled on the petition. Neither respondent appeared at the hearing on the petition on April 6, 2001.
The court has jurisdiction in this matter, and there is no pending action affecting custody of Kimberly in any other court.
Petitioner, DCF, alleges that the grounds for termination of parental rights are abandonment of Kimberly by the parents, failure of the parents to rehabilitate themselves after a finding of neglect, and the lack of an on-going parent-child relationship.
The court has read the verified petition and the social study dated December 28, 2000 and having heard the testimony of the DCF social worker, Mary Morales, makes the following findings:
On November 1997, Kimberly was born. On that date, DCF received a report from Bristol Hospital stating that at the time mother was admitted she had a strong smell of cat urine, was physically filthy and treated for head lice and "crabs." Mother's body was covered with flea bites and admitted that the house in which she lived was infested with roaches. Mother presented with no parenting skills and had no idea what to do with the child.
Investigation revealed the house to he dirty, infested with roaches, garbage throughout and a strong pervasive odor. The living arrangements were unsuitable. Kimberly's parents moved in with a paternal aunt and later on November 27, 1997 they moved in with relatives, the mother's father and step-mother in whose foster home Kimberly presently resides.
In early December 1997, the parents were referred to the Bristol Hospital Parent Aid Program and to the Bristol Visiting Nurses Association. They were generally compliant but never grasped their parenting needs and did not follow through with medical care for Kimberly.
In early December 1997, the parents moved out of the relatives home and left Kimberly until December 29, 1997. About that time the parents and Kimberly moved into subsidized housing in Bristol.
There followed numerous incidents of domestic violence between the parents. They did not follow through with counseling to address domestic violence issues. The parents who were married on July 12, 1997, divorced CT Page 6936 in mid-1998.
On April 6, 1998, Kimberly was observed to have a severe diaper rash that had persisted since January 1998. She also had a persistent upper respiratory infection and a yeast infection in her neck. The living condition was filthy; the child was dirty; and there was an inadequate supply of baby formula in the house. Kimberly was not receiving the prescribed medications for her infections. DCF invoked a 96 hour hold and an Order of Temporary Custody was granted on April 8, 1998 and sustained on June 14, 1998.
Kimberly was initially placed in a licensed DCF Foster Home on April 6, 1998. Her maternal grandfather and his wife became a licensed relative foster home and Kimberly was placed there on October 22, 1999. She continues to live with her relatives who also have guardianship of Kimberly's younger brother and custody of her younger sister. The foster parents bought a larger home to accommodate Kimberly and her siblings. She has thrived in her placement with her relatives, and she has bonded with them.
Mother's visitation with Kimberly has been sporadic; mother visited eight times between December 1, 1998 and February 17, 2000. Kimberly has not recognized her mother and has refused to go to her. The mother's last visitation with Kimberly was in May 2000. Mother has visited with Kimberly's sister but never inquires about or asks to visit with Kimberly. Since her last contact with Kimberly in May 2000, mother has sent no gifts, cards, or letters.
Father did not visit with Kimberly from about September of 1998, when she was ten months old until May of 2000. He has not visited with her since. He has not sent cards, gifts or letters to her.
Neither parent has supported Kimberly financially, emotionally or physically.
Mother has been offered the following services: Bristol Hospital VNA, Bristol Hospital Parent Aid, Bristol Hospital Parenting Classes, Housing Authority Section 8, marital counseling at Wheeler Clinic, substance abuse evaluation at Wheeler Clinic, marital counseling at Bristol Counseling Center, individual therapy at Wheeler Clinic, Bristol Counseling Center, Family Services, couples counseling at Family Services, Prudence Crandall, St. Vincent DePaul Shelter, substance abuse evaluation at Life Line, and young parenting program at Life Line. She has been generally non-compliant and where she has been compliant she has not benefitted to any degree to overcome her lack of parenting skills or stability. She has had two other children since Kimberly's birth and CT Page 6937 neither one of them is in her care. The same issues that presented at the time of Kimberly's removal continued with the other two children. Mother cannot maintain stable employment or housing and has failed to address her lack of parenting skills, mental health issues and domestic violence problems.
Father has been offered the following services: Bristol Hospital VNA, Bristol Hospital Parent Aid, Bristol Hospital Parenting Classes, Housing Authority Section 8, marital counseling at Wheeler Clinic, substance abuse evaluation at Wheeler Clinic, marital counseling at Bristol Counseling Center, anger management programs at Wheeler Clinic and at Bristol Counseling Center. He has been generally non-compliant and where he has been compliant he has not benefitted to any degree to overcome his lack of parenting skills or stability.
ADJUDICATION
The Court finds by clear and convincing evidence that the facts warranting adjudication have existed for more than one year prior to the filing of the petition and that
1) the mother and father have abandoned the child in that they have failed to maintain a reasonable degree of interest, concern or responsibility for the welfare of the child;
2) there is no ongoing parent/child relationship with respect to the mother and father that ordinarily develops as a result of a parent having met, on an ongoing day to day basis, the physical, emotional, moral, and educational need of the child, and to allow further time for the establishment of a parent/child relationship would be detrimental to the best interest of the child;
3) Kimberly has been found in a prior proceeding to have been neglected or uncared for, and the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child.
DISPOSITION
Having found that the grounds exist for termination of parental rights, the court must now consider the appropriate disposition. Here, the focus is not on the parents directly, but on the best interests of the child, Kimberly. The court may consider the evidentiary time-frame up to the present. The following are the required findings of General Statutes § 17a-112 (e): CT Page 6938
1) Appropriate and timely services were provided to father and mother by DCF, including psychological counseling, transportation assistance, parenting, marital and substance abuse counseling, and visitation coordination.
2) DCF made reasonable efforts to reunify the parents with the child. The parents have been offered services as described above, but were unwilling or unable to cooperate fully. They have not resolved the deficiencies in their parenting skills and in their ability to provide a safe, nurturing and healthful environment for Kimberly which led to the commitment in 1998.
3) DCF, with the approval of the court, set reasonable and realistic expectations in order to reunify the family. Mother and father failed to comply fully with expectations. They failed for long periods to keep their whereabouts known; they failed to visit Kimberly on a consistent basis but went for long periods without any visits; they failed to submit to substance abuse evaluations when required or to fully participate in parenting classes, counseling or home services; they failed to obtain adequate housing or income.
4) Kimberly has strong emotional ties with her foster family and no ties with her biological mother or biological father.
5) Kimberly is 3 1/2 years old. She is in need of a permanent, stable home and a permanent resolution.
6) Neither father nor mother have been able to conform their conduct to acceptable parental standards. Giving them additional time would not likely bring their performance as parents within acceptable standards to make it in the best interests of Kimberly to be reunited. The court relies upon father's significant lack of involvement with Kimberly, his secondary role as parent and mother's continuing failure to have the sustained ability to parent as evidenced, in part, by the subsequent placement of Kimberly's two younger siblings with the relatives.
7) Mother and father have not been prevented from maintaining a meaningful relationship with their child; their own conduct and choices have prevented them from maintaining such a relationship.
The court notes that Kimberly's counsel has recommended termination of parental rights and has described the foster parents, who are desirous of adopting Kimberly, as "dedicated".
The court finds, based upon the testimony and evidence presented by CT Page 6939 clear and convincing proof, that it is in Kimberly's best interest to have the parental rights terminated and to have Kimberly available for adoption. These findings are made after considering Kimberly's needs, the length of time she has been separated from her family of origin, her need for a secure and permanent environment, her relationship with her foster parents, and the totality of circumstances surrounding her short life.
It is ORDERED that the parental rights of Veronica and James B. are terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan for Kimberly shall be submitted within thirty days and a motion for review of the plan for her shall be filed in accordance with state and federal law.
Tanzer, J.